UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

VLADIMIR DOBROSMYLOV,

                                  Plaintiff,

-v-

DESALES MEDIA GROUP, INC., the ROMAN CATHOLIC DIOCESE OF BROOKLYN, and MONSIGNOR KIERAN HARRINGTON,

                                  Defendants.

Civil Action No. 1:19-cv- 05122 (BMC)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DESALES' MOTION FOR SUMMARY JUDGMENT

 

HUGHES HUBBARD & REED LLP
    Ned H. Bassen
    Miles Orton
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Defendant DeSales Media Group, Inc.*

96812496_9

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

UNDISPUTED FACTS ..................................................................................................................2

ARGUMENT ..................................................................................................................................4

    I.    DEFENDANT DESALES IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S OVERTIME CLAIM. .......................................5

        A.    Defendant DeSales Is Entitled to Summary Judgment on Plaintiff's Overtime Claim Because Defendant DeSales Properly Classified Plaintiff as an Exempt Creative Professional. ...........................................................................................5

        B.    DeSales Was Permitted to Track Plaintiff's Time. ....................................10

        C.    Plaintiff's Performance Did Not Change His Exempt Status. ....................................................................................................10

    II.    DEFENDANT DESALES IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WAGE STATEMENT REQUIREMENT CLAIM. .....................................................................................10

CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................5

*Clougher v. Home Depot U.S.A., Inc.,* 696 F. Supp. 2d 285 (E.D.N.Y. 2010) .............................6

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ........................................................................4

*Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190 (1966) ......................................................6

*Indergit v. Rite Aid Corp.,* No. 08 CIV. 11364 (PPG), 2010 WL 1327242
    (S.D.N.Y. Mar. 31, 2010) ..........................................................................................................6

*Long v. Endocrine Soc'ty*, 263 F. Supp. 3d 275 (D.D.C. 2017) ..................................................10

*Reyes v. Goya Foods, Inc.*, 549 F. App'x. 876 (11th Cir. 2013) .................................................10

*Scott v. SSP Am., Inc.*, Nov. 09-CV-43399 RRM VVP, 2011 WL 1204406
    (E.D.N.Y. Mar. 29, 2011) ........................................................................................................10

*Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290 (E.D.N.Y. 2016) .............................5

*Youngv. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ....................................................7

**Statutes and Rules**

29 U.S.C. § 255 (2018) ...................................................................................................................6

Fed. R. Civ. P. 56(a) .......................................................................................................................4

NY Labor Law § 195 ...............................................................................................................10, 11

NY Labor Law § 663 .......................................................................................................................6

**Regulations**

12 NYCRR 142-2.14 .......................................................................................................................6

29 C.F.R. § 541.2 (2019) ........................................................................................................6, 7, 9

29 C.F.R. § 541.200 (2019) ............................................................................................................7

29 C.F.R. § 541.302 (2019) ....................................................................................................5, 6, 7

29 C.F.R. § 541.700 (2019) ............................................................................................................6

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22.122 (April 23, 2004) ...................................................................................................................10

U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter FLSA2005-5 (Jan. 7, 2005) ...................................................................................................................................10

96812496_9

Defendant DeSales Media Group, Inc. ("Defendant DeSales") respectfully submits this memorandum of law in support of its motion for summary judgment on the remaining claims in Plaintiff's Complaint (ECF No. 1).

## PRELIMINARY STATEMENT

Defendant DeSales is a not-for-profit corporation that publishes news and information with a Catholic point of view on various media, including newspaper, television and the internet. (Defendant Desales' Rule 56.1 Statement of Undisputed Facts ("UF") ¶ 2.) Plaintiff Vladimir Dobrosmylov ("Plaintiff") worked for Defendant DeSales at its Currents News, a television news program. (*Id.* ¶¶ 11, 14.) Currents News is a small video news operation, with 10 direct and 15 indirect employees, that puts out a program every weekday on local and global Catholic-focused news, airing in New York City, Long Island, and parts of downstate New York. (*Id.* ¶ 14.)

Plaintiff's original Complaint alleged religious discrimination and emotional distress as well as overtime pay violations and failure to comply with New York State Wage Statement requirements. Plaintiff's original Complaint named Monsignor Kieran Harrington as a defendant, in addition to Defendant DeSales and the Roman Catholic Diocese of Brooklyn. During discovery, Plaintiff stipulated to the dismissal of his claims of religious discrimination and emotional distress with prejudice. (*See* Stip. Of Dismissal with Prejudice, ECF No. 22.) Plaintiff also stipulated to the dismissal with prejudice of all claims against Monsignor Harrington. (*Id.*)

Defendant DeSales submitted a pre-motion letter to the Court on April 22, 2020, requesting permission to make a motion for summary judgment on the remaining claims of overtime pay violation and failure to comply with New York State Wage Statement requirements. (Defendant Desales' Pre-Mot. Letter, 1, ECF No. 26.) Plaintiff filed a response with the Court on April 27, 2020, arguing that Plaintiff was entitled to receive overtime pay because, contrary to Defendant DeSales' pre-motion letter, Plaintiff was not exempt from overtime pay under the creative

professional exemption. Defendant DeSales submits that Plaintiff's pre-motion response letter misrepresented the record facts to the Court. Plaintiff's pre-motion response letter represented to the Court that Plaintiff's job was not creative (as required by the overtime pay exemption) but, rather, "only required Plaintiff to collect, organize, and record pre-existing visual and audio information as directed by the producers." (Pl.'s Pre-Mot. Letter Resp., 2, ECF No. 29). As detailed below, Plaintiff's representation of his job to the Court is belied by Plaintiff's own deposition testimony and contemporaneous documentation as to the creative aspects of his job. In sum, the undisputed facts show that as Lead Video Editor and Graphic Designer for DeSales' television news program, Currents News, Plaintiff's primary job duty required invention, imagination, originality, and talent in video editing and graphic arts. Accordingly, there is no genuine issue of material fact as to Defendant DeSales having properly classified Plaintiff as a creative professional, exempt from overtime pay, and the Court ought to grant summary judgment to Defendant DeSales.

Moreover, as Plaintiff admits in his pre-motion response letter, his wage statement claim is predicated on finding that Plaintiff was misclassified as an exempt overtime employee. (*Id.*) There is no genuine issue of material fact as whether Defendant DeSales complied with New York State's Wage Statement requirements on New York State Department of Labor forms.

**UNDISPUTED FACTS**

The following facts are undisputed. They come from Plaintiff's own deposition testimony and/or contemporaneous documentation.

Plaintiff first began working for the predecessor of Defendant DeSales in 1997, as a part time video editor, on an hourly basis. (UF ¶¶ 1, 5.) He continued working as such on a part-time, hourly basis through 2007. (*Id.* ¶¶ 8, 10.)

In January 2008, Plaintiff accepted a salaried full-time position as a "Post Production Supervisor," acknowledging that his job was exempted from overtime. (*Id.* ¶¶ 8, 10.) Several months later, Plaintiff was transferred to work at Defendant DeSales' Currents News, as Lead Video Editor and Graphic Designer. (*Id.* ¶¶ 11, 12.) As such, Plaintiff continued to work as a salaried full-time employee.

As Lead Video Editor and Graphic Designer Plaintiff worked on pre-production, production, and post-production of Currents News. (*Id.* ¶¶ 12, 15.) Plaintiff worked with pieces of video he received from others for the news program to edit, convert, and combine them to fit the requirements of that day. (*Id.* ¶ 16.) Plaintiff determined and designed the graphic art for Currents News and was responsible for ensuring that the program fit within the allocated time and if not, editing it to do so. (*Id.* ¶ 16, 18, 20.) As Plaintiff testified at deposition, the recording of the news programs was never smooth because "there [were] lot[s] of gaps, lots of corrections, corrections in the script, corrections in the video, [and] corrections as producers if it is live feed." (*Id.* ¶ 17.) Plaintiff was responsible for "fixing all the errors" to build a 25 minute program, with a "very short period of time" for his editing. (*Id.* ¶ 18.) Plaintiff admitted at deposition that his work was vital to the appearance and substance of Currents News. (*Id.* ¶ 24.)

Plaintiff also created original graphic art and/or animations to accompany individual news programs, as well as graphics animations that Currents News used regularly. (*Id.* ¶¶ 20, 21.) This included all full screen graphics for the nightly news. (*Id.* ¶ 22.) Plaintiff's job required him to set a production standard for the news programs and he was in charge of quality control before the Currents News programs hit the air each day. (*Id.* ¶ 25.) Thus, after creating the news program, Plaintiff's job required him to be responsible for the final program to be shown on television. (*Id.* ¶ 23.) He also was responsible for the web version of Currents News and for distribution to

YouTube, etc. (*Id.*) Plaintiff listed on his LinkedIn page "web content management and moderation" at Defendant DeSales, which he admitted at deposition included creating key words, titles, and credits, as well as changing and adding information. (*Id.* ¶ 27.)

Plaintiff was also in charge of producing the weekly "Tablet" promotion, a short summary and lead-in for the weekly newspaper publication, Tablet. (*Id.* ¶ 28.) The Tablet promotion is a 30-second video created once per week that Plaintiff produced. (*Id.* ¶ 29.) In order to do so, Plaintiff applied his skills to combine voiceover pieces and pages of the Tablet into a 30-second animation video clip that was aired on Currents News. (*Id.* ¶ 30.)

In addition to the job duties discussed above, Plaintiff pitched potential news stories for Currents News, based on his own perspective and experiences. (*Id.* ¶ 26.)

Defendant DeSales terminated Plaintiff's employment on October 19, 2018. (*Id.* ¶ 3.) From 2008 through his termination in October 2018, Defendant DeSales paid Plaintiff a salary of at least $76,000 annually. (*Id.* ¶ 32.) At the time of his termination, Plaintiff salary was $78,200 annually. (*Id.* ¶ 33.) Defendant DeSales never reduced Plaintiff's salary for any reason, including his having missed work. (*Id.* ¶ 34.)

**ARGUMENT**

Summary judgment should be granted where the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of [a summary judgment] motion." *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007) (citation omitted). Once the moving party has shown that it is entitled to a judgment as a matter of law, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict

in his favor," and may not rely "upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Applying this standard here, Defendant DeSales submits that summary judgment on Plaintiff's remaining claims ought to be granted.

I. **DEFENDANT DESALES IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S OVERTIME CLAIM.**

   A. **Defendant DeSales Is Entitled to Summary Judgment on Plaintiff's Overtime Claim Because Defendant DeSales Properly Classified Plaintiff as an Exempt Creative Professional.**

Plaintiff is wrong here in claiming that he is owed overtime pay under the FLSA and New York State Labor Law (Compl. ¶¶ 51, 55) because the undisputed facts (Plaintiff's own deposition, testimony and contemporaneous documentation) demonstrate that Defendant DeSales properly classified him as an exempt creative professional.

To qualify as an exempt creative professional, an employee must (1) earn not less than $455 per week, (2) be compensated on a salary or fee basis, and (3) "[his/her] primary duty must be the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.302(a) (2019). The NYLL contains an analogous exemption for individuals "whose primary duty consists of the performance of work . . . original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee[.]" 12 NYCRR 142-2.14(c)(4)(iii); *see also Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 303 (E.D.N.Y. 2016) (FLSA's and N.Y. Lab. Law's primary duty tests are nearly identical and thus federal law can be applied to both analyses).

"Primary duty", for purposes of FLSA exemptions means

96812496_9

> the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a) (2019).

Determination of an employee's "primary duty" is a "highly fact-intensive inquiry that is to be made on a case-by-case basis in light of the totality of the circumstances." *Indergit v. Rite Aid Corp.*, No. 08 CIV. 11364 (PPG), 2010 WL 1327242, at *5 (S.D.N.Y. Mar. 31, 2010) (internal quotation marks omitted) (quoting *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010)); *see also* 29 C.F.R. § 541.302(c) ("Determination of exempt creative professional status, therefore, must be made on a case-by-case basis.").

"A job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2 (2019). However, a recognized field of artistic or creative endeavor specifically includes "graphic arts" by way of example rather than limitation. *See* 29 C.F.R. § 541.302(b). The employer bears the burden of proving that employees are exempt. *See Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966); *see also Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) (citations omitted).

The statute of limitations applicable to Plaintiff's overtime claim constrains the potential liability period to, at most, 6 years. NY Lab. Law § 663(3); *see also* 29 U.S.C. § 255(a) (2018) (a 3 year limitations period applies to the FLSA claim). Accordingly, Plaintiff's overtime claim is

limited to the job duties he had after April or May 2008, when he was Lead Video Editor and Graphic Artist for Currents.

Fact discovery shows that Plaintiff earned a salary of more than $76,000 per year, which was never decreased, regardless of quality, quantity or days worked. (UF ¶¶ 32, 33, 34.) This satisfies the first two requirements of the FLSA exemption. *See* 29 C.F.R. §§ 541.300(a)(1), (b); 541.200(a)(1), (b) (2019).

Fact discovery also shows that Plaintiff's "primary duty" meets the requirements of the creative professional exemption, because Plaintiff's daily job duties required invention, imagination, originality, and talent in video editing and graphic arts.

As detailed above and admitted by Plaintiff at deposition, Plaintiff's job duties as Lead Video Editor and Graphic Artist required Plaintiff to set the overall stylistic standard for the Currents News program, create original graphics, and fix errors and fill gaps in a very short period of time to create a 25 minute program. Unlike a larger news operation, Plaintiff exercised these job duties on a constant basis because, as Plaintiff testified at deposition, the recording of Currents News was never smooth. (UF ¶ 17, 18.) Accordingly, as Plaintiff admitted at deposition, Plaintiff's work was "vital" to the appearance and substance of Currents News. (*Id.* ¶ 24). Thus, Plaintiff's primary job duty required invention, imagination, originality, and talent in graphic arts and video editing. Plaintiff did not merely copy and paste files, as Plaintiff represented to the Court in his pre-motion response letter but, rather, his job duty, as Plaintiff admitted at deposition, was to edit— fixing errors and gaps, creating words, changing and adding information, and weaving video pieces together with original graphics that he created, in an error free and seamless way, all in a very short period of time.

Plaintiff's job duties also included responsibility for developing an overall product standard for the news program and ensuring that the news programs were always consistent in style, timing and quality, given input from different reporters and other video news sources. (*Id.* ¶¶ 15, 17, 25.) In essence, Plaintiff's job duties made him responsible for the overall look of the production of video and graphic elements that went into the newscast each day.

In addition to his pre-production, production, and post-production efforts on Currents, Plaintiff also participated in the story-development stage. He admitted in his deposition that his job duties included pitching stories for Currents News drawing from his own life experiences. (*Id.* ¶ 26.) Plaintiff, as well as other team members, would share their ideas during the morning team meeting. (*Id.*) Plaintiff's job duties also extended to promotions for Defendant DeSales' weekly newspaper, "The Tablet." Plaintiff was responsible, once each week, for designing and creating a 30 second promotion for The Tablet. (*Id.* ¶¶ 29-30.) Plaintiff independently created the graphics and animations and for the weekly promotion, combining voiceover pieces and pages into a unified and finished product. (*Id.* ¶¶ 30-31).

Plaintiff's representation in his pre-motion response letter (ECF No. 29) that his job was comparable to that of an animator of motion-picture cartoons—particularly as that role existed when this illustrative example was adopted in 1940—is flatly contradicted by his own deposition testimony and contemporaneous documentation. This is evident by looking at the other types of illustrative examples listed with animator: a "copyist" and a "re-toucher of photographs." 29 C.F.R. § 541.2. By contrast to these mechanistic and rote roles, and applying the case-by-case analysis required by the FLSA to the record in this matter, Plaintiff's job required him to imagine and create original works by applying his skills in video editing and graphic arts that were vital to the appearance and substance of the news program, including but not limited to the creation of the

news program's overarching stylistic standard. (UF ¶¶ 18, 20, 24-25.) The record shows, as described above, that Plaintiff's job duties went far beyond simply copying files or repetitive tasks without any discretion or autonomy and instead required the application of his talent and skills in the composition of and creation of original works.

To the extent Plaintiff contends that he is not exempt because his discretion was limited by directions he received from the Currents editorial management staff, the Second Circuit rejected this argument in *Freeman v. Nat'l Broad. Co., Inc.*, 80 F.3d 78, 82-83 (2d Cir. 2002). In *Freeman*, the Court found that television producers and broadcasters were exempt creative professionals, even though they were required to follow formats, writing styles and time limits dictated by others, given that their work required gathering, developing, shooting, writing and editing news stories, it "entail[ed] a sufficient degree of creativity to qualify them . . . as employees whose primary duty consists of the performance of work requiring invention, imagination, or talent in a recognized field of artistic endeavor." *Id*. at 82-83, 87. One litigant in *Freeman*, Garner, worked with many of the same duties and constraints as Plaintiff, as his work was only accomplished as part of a large team and he was primarily focused on editing existing footage. *Id*. at 81. In the same way, the guidance provided by the Currents editorial staff in no way detracts from the originality, imagination, and creativity required by Plaintiff's job duties.

In sum, fact discovery—in particular Plaintiff's own undisputed testimony—clearly demonstrates that Plaintiff's "primary duty" of Lead Video Editor and sole Graphic Artist for the Currents news program meets the requirements of the creative professional exemption, because Plaintiff's work required invention, imagination, originality, and talent in video editing and graphic arts.

### B. DeSales Was Permitted to Track Plaintiff's Time.

To the extent Plaintiff argues that he was not exempt because DeSales tracked time and required employees to record their hours, this argument is without merit. Employers may require exempt employees to record and track their hours and to work a specified schedule without affecting the employees' exempt status. *See*, *e.g.*, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,178 (April 23, 2004); U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter FLSA2005-5 (Jan. 7, 2005). Notably, Plaintiff's hours had no effect on his salary, which remained constant.

### C. Plaintiff's Performance Did Not Change His Exempt Status.

Moreover, to the extent Plaintiff attempts to argue that his performance did not rise to the requisite talent required for a creative professional, this argument is equally unavailing. It is not poor or inadequate performance of exempt employees' job duties that determines whether employees qualify for an exemption but, rather, it is the employer's reasonable expectation of performance of job duties. *See, e.g.*, *Reyes v. Goya Foods, Inc.*, 549 F. App'x. 876, 877-878 (11th Cir. 2013); *Long v. Endocrine Soc'y*, 263 F. Supp. 3d 275, 291 (D.D.C. 2017); *Scott v. SSP Am., Inc.*, No. 09-CV-43399 RRM VVP, 2011 WL 1204406, at *8 (E.D.N.Y. Mar. 29, 2011).

## II. DEFENDANT DESALES IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WAGE STATEMENT REQUIREMENT CLAIM.

Defendant DeSales is entitled to summary judgment on Plaintiff's Wage Statement Requirement Claim because, as Plaintiff admits in his pre-motion letter (Pl.'s Pre-Mot. Letter Resp., 2), this claim is predicated on finding that Plaintiff was misclassified as an exempt overtime employee. NY Labor Law Section 195(3) requires that employers:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that

>payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages[,]

and then outlines further requirements for the wage statements of non-exempt overtime employees.[1]

Fact discovery shows that Defendant DeSales provided Plaintiff with the wage statements that New York law required, using a New York Department of Labor form during the few years when there was an annual requirement, and then continuing to comply when the requirement changed to supplying the information with each payment of wages. (UF ¶¶ 35, 36.) This met the relevant NY Labor Law requirements regardless of how Plaintiff was classified for overtime purposes. Accordingly, Defendant DeSales is also entitled to summary judgment on this claim.

---

[1] The relevant requirement continues, "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." NY Lab. Law § 195(3) (McKinney).

## CONCLUSION

For the reasons set forth above, Defendant DeSales respectfully requests that the Court grant its motion for summary judgment dismissing this action in its entirety, together with such other further relief as this Court deems just and proper.

Dated: New York, New York
       May 27, 2020

                                Respectfully submitted,

                                HUGHES HUBBARD & REED LLP

                                By:     s/ Ned H. Bassen
                                        Ned H. Bassen
                                        Miles Orton
                                One Battery Park Plaza
                                New York, New York 10004-1482
                                (212) 837-6000

                                *Attorneys for Defendant DeSales Media Group, Inc*