# JOSEPH & KIRSCHENBAUM LLP

Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas Buzzard

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

May 4, 2021

**VIA ECF**

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re: Dobrosmylov v. DeSales Media Group, Inc. et al., No. 19-CV-5122 (BMC) –
> Plaintiff's Pre-Motion Letter in Opposition to Defendant's Pre-Motion Letters for a
> Second Summary Judgment Motion**

Dear Judge Cogan:

We represent Plaintiff Vladimir Dobrosmylov in the above referenced matter, and we submit this letter in opposition to Defendant DeSales Media Group, Inc.'s ("DeSales") pre-motion letters (Dkt. Nos. 50, 51) requesting permission to file a second summary judgment motion. On April 1, 2021, this Court denied DeSales's motion for summary judgment and found that the "creative professional" exemption to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") did not apply to Plaintiff's employment as a matter of law. (Dkt. No. 49 at 9). At the April 20, 2021 conference, DeSales, for the first time, raised additional issues that they contend should be determined via a second summary judgment proceeding, and the Court allowed DeSales to submit a letter describing the procedural and substantive basis for their second motion. (Minute Entry April 20, 2021). For the reasons outlined below, DeSales's request for a second summary judgment motion should be denied as procedurally improper, an unfair impediment to the efficient prosecution of this case, and, in any event, substantively frivolous. Specifically, DeSales's argument that they are not subject to "enterprise" coverage is plainly wrong, as is clear from the very authority it cites. The other issues on which DeSales intends to move are (a) not appropriate for summary judgment, and (b) summary judgment on those issues would, anyway, not "further the ball," as trial would still be necessary.

## I. DeSales Has Failed to Provide Any Reason Why It Should be Entitled to a Second Attempt at Summary Judgment

In addition to Plaintiff's arguments detailed below that DeSales's second motion should be denied because it is frivolous, this Court should deny DeSales's request to file a second summary judgment motion on procedural grounds. DeSales's anticipated motion is untimely, based on facts and law that were previously known to DeSales at the time of its first unsuccessful summary judgment motion, and would be a truly inefficient waste of judicial resources. This Court has broad discretion to determine whether to allow DeSales to file a second motion for summary judgment. *See Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) ("[D]istrict courts enjoy considerable discretion in entertaining

successive dispositive motions."). However, "[t]he law is clear that 'it is improper for a party to file a successive motion for summary judgment which *is not based upon new facts and which seeks to raise arguments it could have raised in its original motion.*" *Hoefer v. Bd. Of Educ. of the Enlarged City Sch. Dist. Of Middletown*, Case No. 10-cv-3244, 2014 U.S. Dist. LEXIS 48187 at *6 (S.D.N.Y. April 4, 2014) (internal citations omitted) (emphasis added); *see also Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) ("[S]uccessive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion."); *Int'l Bus. Machines v Johnson*, Case No. 9-cv-4826, 2009 U.S. Dist. LEXIS 66851 at *2 (S.D.N.Y. July 30, 2009) (holding that a party would not be permitted to "litigate this matter through piecemeal, seriatim motions requesting the same relief, especially when the information that is the basis for the successive motion was [in that party's] possession at the time of the filing of its first motion"); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (refusing to entertain a second summary judgment motion where movant failed to present facts or arguments that could not have been raised in support of its original motion, emphasizing that "parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised"). This principle is straightforward, fair, and should be applied here.

First, this motion is untimely. This Court ordered the parties to submit pre-motion letters for dispositive motions by April 26, 2020, one week after the close of discovery. (Minute Entry, March 20, 2020). The parties submitted pre-motion letters by that date (which was over a year ago), but DeSales did not raise any of the issues that they raise now. (Dkt. No. 26). As DeSales admitted at the April 20, 2021 conference, all of the facts and legal arguments that DeSales intends to make in their second motion were known and available to them a year ago when they made their first motion for summary judgment.[1] This alone should preclude DeSales from getting a second bite at the apple. *Hoefer*, 2014 U.S. Dist. LEXIS 48187 at *7 ("Because [movant] blatantly seeks to reargue points that he *could have* but…*did not* make, the Court will not exercise its discretion to permit [the movant] to take a second bite at the apple." (emphasis in original)). DeSales fails to cite a single case where a Court allowed a second summary judgment motion that was based on facts and legal arguments available to the movant at the time of the original motion and has made no attempt to explain why it did not raise these issues previously or why this Court should jettison the normal and orderly administration of its docket by setting a trial date and allowing the Plaintiff to present his case.

DeSales's contention that allowing a second summary judgment motion would promote "judicial economy" is risible on its face.[2] "Judicial economy" would have been promoted had DeSales included

---

[1] Contrary to DeSales's suggestion that a footnote in the Court's April 1, 2021 Order and Decision (Dkt. No. 49 at 9 n.5) implied that the Court was somehow blessing DeSales's objections to Plaintiff's factual assertions, this footnote makes it clear that DeSales was aware of these issues, made objections related to the factual predicates underlying these issues in their motion papers, but did not make *any* legal arguments related to these issues at the time of their first motion for summary judgment.

[2] The only case that DeSales relies on to argue that "judicial economy" would be promoted by allowing a second motion is *Vera v. Rodriguez*, Case No. 16-cv-49, 2017, U.S. Dist. LEXIS 214476 at *3-6 (D.N.M. Dec. 27, 2017). However, the facts in *Vera* are clearly distinguishable from this case and show when allowing a second motion would promote judicial economy and when it would not. In *Vera*, the District of New Mexico Court determined whether to allow two successive summary judgment motions to be filed within a short time span or whether the Defendants should have requested to file an omnibus motion that covered every issue in the case. *Id.* The Court determined that at that "stage in the litigation it would create additional burden, expense, and delay for the Court to order Defendants to reformat and resubmit their motions" as one omnibus motion. *Id.* at 6. In *Vera* it was clear that allowing the successive motions to stand furthered "judicial economy" because it prevented further filings, whereas here, allowing DeSales to file its successive motion on issues it could have

2

all of its summary judgment arguments in their first motion, as opposed to separating them out into separate successive motions to be filed a year apart from each other. Allowing DeSales to file this motion, after losing their primary argument, would promote gamesmanship, a piecemeal and inefficient approach to motion practice, and further delay this straightforward, and relatively simple, wage and hour case. As DeSales concedes, some of the issues that it intends to raise in this second motion could just as easily be addressed in a motion for directed verdict after Plaintiff presents his case at trial. Plaintiff posits that it is this approach that plainly promotes judicial efficiency and that doing so would allow the case to move forward, while at the same time preserving DeSales's ability to argue the issues they raise in their letter. The inefficiency of DeSales's anticipated motion is severely exacerbated by the fact that a trial before Your Honor is inevitable, as the only argument that DeSales makes that actually disposes of this case in this Court—its argument regarding enterprise coverage (if the Court agrees and then declines supplemental jurisdiction on the state law overtime claims)—is wildly off the mark, as explained below. For these procedural reasons, Plaintiff respectfully requests that the Court deny DeSales's request to file a second motion for summary judgment.

      **II.**     **DeSales's Argument that it is Not Subject to "Enterprise Coverage" is Frivolous**

This Court should also deny DeSales's request to file a second summary judgment motion on a separate basis because its arguments are substantively without merit. Specifically, DeSales's argument that it is not subject to FLSA "enterprise coverage" is frivolous.[3] Even a cursory reading of *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290 (1985) and *Locke v. St. Augstines' Episcopal Church*, 690 F.Supp.2d 84 (E.D.N.Y. 2010) – the two cases DeSales principally relies upon to argue that "enterprise coverage" does not apply – reveals why this exception to "enterprise coverage" does not apply to DeSales. To be sure, other than to simply cite those cases, DeSales does not explain how the exception stated therein remotely supports their assertion that DeSales is entitled to the exception.

In *Tony & Susan Alamo Foundation*, the Supreme Court rejected a church's attempt to evade liability under the FLSA. 471 U.S. at 295. The employer was a church who argued that because it had a "religious" purpose, the revenue generated from its various businesses was not for a "business purpose" and therefore could not be considered "commercial" revenue for purposes of establishing "enterprise coverage" under the FLSA. 471 U.S. at 295. The Court rejected this argument because the FLSA "contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations." *Id.* at 296. Moreover, the Court further cited longstanding regulations interpreting the FLSA which provide that:

> Activities of eleemosynary, religious, or educational organization may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as *operating a printing or publishing plant*, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise.

---

raised previously would create "additional burden, expense, and delay" to the proceedings by requiring further filings and delay resolution of the case.

[3] At the April 21, 2021 status conference, it was clear from the context of Plaintiff's counsel's comment – that he had "no idea what [Defense counsel was] talking about" – that Plaintiff's counsel was referring to the legal foundation for DeSales's "enterprise coverage" argument, not to DeSales's intention to make this dubious argument.

29 C.F.R. § 779.214 (emphasis added). The Court explicitly rejected the argument that businesses that "are infused with a religious purpose" are exempt from the FLSA. *Tony & Susan Alamo Foundation*, 471 U.S. at 298. The Court explained that Congress recognized that "a church which has a business operation on the side" should not be exempt from the FLSA. *Id.* at 296-298. The Court held that the FLSA covers religious organizations if their "businesses serve the general public in competition with ordinary commercial enterprise" because "the payment of substandard wages would undoubtedly give [these religious institutions] an advantage over their competitors." *Id.* at 299. The Court concluded that "[i]t is exactly this kind of 'unfair method of competition' that the [FLSA] was intended to protect…and the admixture of religious motivation does not alter a business' effect on commerce." *Id.* (quoting 29 U.S.C. § 202(a)(3)).

DeSales's citation to *Locke v. St. Augustine's Episcopal Church* to support its position that its operations are not commercial in nature is misplaced. None of the activities that the *Locke* Court found not to be "commercial" are present here. In *Locke*, the defendant was an actual church. The Court found that a church's religious services, sale of candles and wafers, fundraising from congregants, and operation of Sunday school and music lessons were not "commercial" in nature and that a small two-bedroom apartment that the church rented to its custodian "did not constitute a business operation on the side." *Locke*, 690 F.Supp.2d at 87-88. DeSales does not do ANY of the activities that the *Locke* court determined were not commercial.[4]

DeSales simply fails to allege the undisputed facts that it claims would support its position that the exception applies.[5] DeSales does not explain how its media business does not have a "business purpose" or provide any factual support – such as what its revenue streams are, who its clients are, who its customers are, what media products it creates, and what services it provides – for this assertion. This is so because DeSales is clearly a commercial enterprise. DeSales is a media company, not a church. DeSales contracts with clients to provide media services, it produces media products, it sells advertising space in its media products, it operates a news organization, and it competes with other news media companies in the marketplace. That DeSales may be inspired to undertake these activities because of a religious motivation or purpose or that it contracts with other religious institutions, does not transform its operations into any other than what it is – a media company. The Supreme Court has already considered and rejected this argument (over 35 years ago) as this Court should do here. *See Tony & Susan Alamo Foundation*, 471 U.S. at 295.[6] In short, DeSales's argument would not stand a chance if it were made in a timely manner. DeSales should certainly not be allowed to now hold up a trial to make this plainly wrong argument at this untimely juncture.

### III. DeSales's Remaining Arguments for Summary Judgment Lack Merit

DeSales further argues that it should be allowed to move for summary judgment on the following additional issues: 1) DeSales's good faith affirmative defense, 2) DeSales's willfulness in violating the

---

[4] The *Locke* Court was the first Court to find that this exemption to enterprise coverage applied to a church. *Locke*, 690 F.Supp.2d at 87 (explaining that "[o]nly two courts have applied this test to a church" and both courts found that the exemption did not apply). Notably, DeSales is not a church.

[5] The only reference DeSales makes to any fact on this issue in its pre-motion letter is the conclusory statement that DeSales "does not have at least $500,000 in annual *commercial* revenue." (Dkt. 51 at 2) (emphasis in original).

[6] To the extent that there is a question as to whether DeSales's operations are commercial in nature, this is a question of fact that is inappropriate for summary judgment. *Tony & Susan Alamo Foundation*, 471 U.S. at 298-299 ("[T]he characterization of petitioners' business…is a factual question.").

FLSA,[7] and 3) the number of hours that Plaintiff worked over 40 hours per week. (Dkts. No. 51 at 3-5, 52). All of these issues are either premised on disputed facts and are therefore not appropriate for resolution at summary judgement or are incidental to the case and do nothing to bring the case closer to a resolution and thus allowing a motion on these issues would be an inefficient and wasteful use of judicial resources.

DeSales is not entitled to summary judgment on its FLSA good faith affirmative defense because there is a dispute of fact as to what DeSales did to learn about the requirements of the FLSA and the steps that it took to comply with the statute. Under the FLSA, a plaintiff is presumptively entitled to "liquidated damages equal in amount to actual damages, [unless] the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260). "Good faith in this context requires more than ignorance of prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA, and then move to comply with them." *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). As a result, the employer's "burden is a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).

First, DeSales is incorrect that the good faith affirmative defense is a legal issue that must be decided by a judge. (Dkt. No. 51 at 3). DeSales cites no case in support of this assertion, but instead appears to interpret the term "Court" in 29 U.S.C. § 260 to mean "Judge." *Id.* This is a bizarre approach to statutory interpretation and is clearly incorrect. It is well settled that "[a]t the summary judgement stage, courts are generally reluctant to rule on a party's good faith defense where an FLSA violation has yet to be established." *Ametepe v. Peak Time Parking, Corp.*, Case No. 18-cv-5834, 2021 U.S. Dist. LEXIS 59567 at *25 (S.D.N.Y. March 29, 2021). That is because the question of willfulness or good faith is a question of fact to be determined by a fact-finder. *See e.g., Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F.Supp.3d 490, 503 (S.D.N.Y. 2015) ("Courts in this Circuit have generally left the question of willfulness to the trier of fact.").

Substantively, DeSales's conclusory statement that it "sought, obtained, and relied on advice from counsel in classifying plaintiff as exempt from overtime" does not entitle it to the good faith affirmative defense as a matter of law. (Dkt No. 51 at 3); *see e.g., Knox v. John Varvatos Enter.*, Case No. 17-cv-772, 2021 U.S. Dist. LEXIS 5371, at *47-49 (S.D.N.Y. Jan. 12, 2021) (affirming jury's verdict denying employer's good faith affirmative defense even though employer testified that they relied on outside counsel's advice). Critically, the record is devoid of any specific facts related to what exactly DeSales told their counsel about Plaintiff's position, what advice DeSales's counsel actually provided, when this communication took place, and who at DeSales was involved in these conversations. Absent this information, a jury could easily determine that DeSales's reliance on outside counsel was unjustified. *See Knox*, 2021 U.S. Dist. LEXIS 5371, at *47 ("In the end, the jury could appropriately disbelieve that [the employer] had given counsel a full explanation of all the facts and thus conclude that [the employer's] testimony – that after speaking to counsel she 'felt confident that [they] were] not violating any U.S. laws' – was unjustified."). Even if DeSales had a "long shot" of winning

---

[7] As is consistent with its apparent shoot-by-the-hip approach to this litigation, DeSales did not raise the willfulness issue at the April 20, 2021 conference, but instead addressed it for the first time in their second pre-motion letter (Dkt. No. 51) and then again in their supplemental letter, (Dkt. 52) filed a day after the Court ordered deadline.

this argument on summary judgment, it should not be allowed to do so now, at this late stage of the game, especially when a win on this issue would not dispose of this case.

DeSales's argument that it should be permitted to move for summary judgment to shorten the statute of limitations from three to two years for the FLSA claims because Plaintiff "cannot meet his burden of establishing willfulness" is incidental to the case, does not move the ball forward in any appreciable way, and is functionally moot. (Dkt. No. 51 at 4). Should DeSales succeed on this issue, Plaintiff would still have claims under the FLSA covering two years, and claims under the NYLL covering six years, the Court would have jurisdiction over the case pursuant to the FLSA, and the parties would be in the same functional position they would be in had DeSales not made its motion on this issue. *See e.g., Lanzetta v. Florio's Enters.*, 763 F.Supp.2d 615, 622 (S.D.N.Y. Jan. 25, 2011) (explaining that "[f]or the period that is untimely under [FLSA], the [NYLL] claims are operative"). In other words, a ruling in DeSales's favor would not reduce the amount of damages for which DeSales would be potentially liable nor would it answer the core question of liability. *See e.g. Rios v. Neighborhood Constr. Corp.*, Case No. 7-cv-8701, 2009 U.S. Dist. LEXIS 95629 at *1 n.2 (S.D.N.Y. Oct. 14, 2009). Moving on this issue now, after having previously moved for summary judgment on other issues, is truly a waste of judicial resources. However, to avoid unnecessary motion practice and as a show of Plaintiff's good faith approach to resolving the remaining issues in this litigation, Plaintiff is prepared to concede that there is no dispute of fact on this issue and that for purposes of trial, DeSales's violation of the FLSA was not done willfully.

Finally, DeSales's argument about the number of hours that Plaintiff worked is confusing and somewhat nonsensical. Plaintiff maintains its position, taken at the April 21, 2021 status conference, that a fact-finding is necessary to determine the number of hours Plaintiff worked. Contrary to DeSales's interpretation of the term "fact-finding" to mean "more discovery," Plaintiff posits that there is a factual dispute based on the record established during discovery as to how many hours Plaintiff actually worked. DeSales took this exact position in their first summary judgment motion. (Dkt. No. 41 at ¶99) (disputing Plaintiff's assertion that Plaintiff regularly worked over 40 hours per week). It is unclear what has changed since then, other than DeSales's obvious desire to do anything to avoid a trial in this matter. Nevertheless, DeSales is simply wrong that because it has produced time records for Plaintiff there are no issues of fact related to how much time Plaintiff worked. *See e.g., Haifeng Xie v. Sakura Kai I Inc.*, Case No. 17-cv-7509, 2019 U.S. Dist. LEXIS 62721 at *15 (E.D.N.Y. April 11, 2019) (noting that work schedules "set a floor as to [Defendants] liability" and that "[t]he only genuine issue of fact is whether Defendants are *more* liable than these documents suggest").

Defendants took the position in their first summary judgment motion that Plaintiff arrived to work earlier than instructed and may argue that Plaintiff is not be entitled to overtime for those hours worked. (Dkt. No. 23 at 3). In addition, there is a dispute as to whether Plaintiff worked during his lunch period, which DeSales automatically deducted from his time regardless of whether Plaintiff worked or ate lunch. (Formica Depo. at 42-43, 45-46). To be sure, Plaintiff is open to the possibility that the parties could stipulate to the number of overtime hours Plaintiff worked. (Dkt. 38 at 7). However, as of yet, because DeSales has refused to engage with Plaintiff's recent settlement offer and corresponding damages calculation, which is based on Plaintiff's calculation of overtime hours worked, there is still a live dispute of fact as to how many overtime hours Plaintiff worked during the statutory period.

In conclusion, Plaintiff respectfully requests that the Court deny DeSales's request to file a second motion for summary judgment.

Respectfully Submitted,

JOSEPH & KIRSCHENBAUM LLP

*/s/D. Maimon Kirschenbaum*
Maimon Kirschenbaum
Michael DiGiulio

*Attorneys for Plaintiff*
