**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
**VLADIMIR DOBROSMYLOV,**

       **Plaintiff,**

  **-v-**                                     NO.:  1:19-cv-05122 (BMC)

**DeSALES MEDIA GROUP, INC., the ROMAN
CATHOLIC DIOCESE OF BROOKLYN, and
MONSIGNOR KIERAN HARRINGTON,**

       **Defendants.**

-----------------------------------------------------------------------x

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DESALES MEDIA GROUP, INC'S RENEWED MOTION FOR SUMMARY JUDGMENT

---

### JOSEPH & KIRSCHENBAUM LLP

Michael DiGiulio
D. Maimon Kirschenbaum
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................i

I.  PRELIMINARY STATEMENT...............................................................................1

II. COUNTER STATEMENT OF MATERIAL FACTS................................................2

    A.  DeSales's History and Purpose .......................................................................2

    B.  DeSales's Media Operations and Services .....................................................2

    C.  Plaintiff's Relevant Job Duties ......................................................................4

III. ARGUMENT .........................................................................................................5

    A.  There Are Material Issues of Fact Regarding FLSA Coverage That Preclude

        Summary Judgment ........................................................................................5

        i.  DeSales is an Enterprise Engaged in Commerce and is Covered

            by the FLSA.............................................................................................6

        ii. Plaintiff was Engaged in Commerceand in the Production of Goods

            for Commerce .......................................................................................13

            a. Plaintiff was "engaged in commerce" because his job duties required

                him to download video content off the internet, alter this content, and

                upload DeSales's media products to the internet...........................14

            b. Plaintiff produced goods for commerce by assembling and finalizing the

                Currents News program and the Tablet Promo.............................18

    B.  DeSales's Argument Regarding Plaintiff's Time Records Should be Rejected........20

    C.  This Court Should Exercise Supplemental Jurisdiction Over Plaintiff's

        New York Labor Law Claims.................................................................23

IV.   CONCLUSION.......................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Aponte v. Modern Furniture Mfg. Co.*, Case No. 14-cv-4813,
2016 U.S. Dist. LEXIS 131408 (E.D.N.Y. Sept. 24, 2016) ................................ 22

*BellSouth Telecomms., Inc. v. W.R. Grace & Co. – Conn.*, 77 F.3d 603 (2d Cir. 1996) ....... 9

*Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280 (S.D.N.Y. 2000) ................. passim

*Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006) ....................... 14

*Brennan v. Arnheim & Nelly, Inc.*, 410 U.S. 512 (1973) ...................................... 14

*Capitol Records, LLC v. Escape Media Group, Inc.*, Case No. 12-cv-6646,
2014 U.S. Dist. LEXIS 183098 (S.D.N.Y. May 28, 2014) .................................. 20

*Divins v. Hazeltine Electronics Corp.*, 163 F.2d 100 (2d Cir. 1947) ................................ 14

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) .............. 5

*Foster v. Gold & Silver Priv. Club, Inc.*, Case No. 7:14CV00698,
2015 U.S. Dist. LEXIS 165217 (W.D.V. Dec. 8, 2015) ..................................... 16, 17

*Gallego v. Adyar Ananda Bhavean Corp.*, No. 16 CV 4631,
2019 U.S. Dist. LEXIS 3423 (S.D.N.Y. Jan. 8, 2019) ...................................... 22

*Gordon v. Gen. Prop. Mgmt. Assocs.*, Case No. 19-cv-8107,
2020 U.S. Dist. LEXIS 196596 (S.D.N.Y. Oct. 22, 2020) .................................. 6

*Gregory v. Quality Removal, Inc.*, Case No. 14-2148-civ,
2014 U.S. Dist. LEXIS 154293 (S.D. Fl. Oct. 29, 2014) ................................... 19, 20

*Haifeng Xie v. Sakura Kai I Inc.*, Case No. 17-cv-7509,
2019 U.S. Dist. LEXIS 62721 (E.D.N.Y. April 11, 2019) .................................. 22

*Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251 (E.D.N.Y. 2007) ........................... 14, 16

*Jaramillo v. Maoz, Inc.*, Case No. 20-201606-civ,
2021 U.S. Dist. LEXIS 29537 (S.D. Fla., Feb. 16, 2021) .................................. 17

*Jones-Khan v. Westbury Bd. Of Educ.*, No. 13-cv-7144,
2017 U.S. Dist. LEXIS 62897 (E.D.N.Y. April 25, 2017) .................................. 5

*Kendrick v. Eagle Int'l Grp., LLC*, No. 08-80909-CIV-MARRA,
2011 U.S. Dist. LEXIS 36246 (S.D. Fla. Apr. 4, 2011)....................................16

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) ...............................21, 23

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 1218 (2d Cir. 2006)..............................23

*Locke v. St. Augustine's Episcopal Church,* 690 F. Supp. 2d 77 (E.D.N.Y. 2010)..............12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...........................5

*Malloy v. Ass'n of State and Territorial Solid Waste Mgmt. Officials*,
955 F. Supp. 2d 56 (D.D.C. 2013).......................................................................13

*McLeod v. Threlkeld*, 319 U.S. 491 (1943) .........................................................................14

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107 (2d Cir. 2017) .................6

*SEC v. Straub*, 921 F. Supp. 2d 244 (S.D.N.Y. 2013)........................................................15

*S.M.R.C., Inc. v. Watkins*, Case No. 13-cv-193,
2015 U.S. Dist. LEXIS 133751 (E.D.N.Y. May 4, 2015)....................................21

*Shultz v. Circulation Sales, Inc.*, 301 F. Supp. 937 (E.D. Mo. 1969)..................................15

*Shultz v. KSFM, Inc.*, Case No. Civ-S-739,
1969 U.S. Dist. LEXIS 9578 (E.D Ca. March 14, 1969) .......................................passim

*Terry v. Ashcroft*, 336 F.3d 128, 137 (2d. Cir. 2003) ...........................................................5

*Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290 (1985).........................passim

*Villafana v. Feeding S. Fla., Inc.*, Case No. 13-60760-civ,
2013 U.S. Dist. LEXIS 82603 (S.D. Fl. June 12, 2013).......................................9, 12

*Volker v. Cty. Of Nassau*, Case No. 13-cv-01187,
2019 U.S. Dist. LEXIS 196827 (E.D.N.Y. Nov. 13, 2019) ..................................20

*Walker v. Hickenlooper*, 627 F. App'x 710 (10th Cir. 2015)..............................................9

*Walker v. Interfaith Nutrition Network, Inc.,* Case No. 14-cv-5419,
2015 U.S. Dist. LEXIS 91418 (E.D.N.Y. July 14, 2015).....................................12, 13

**Statutes**

28 U.S.C. § 1367(c).............................................................................................................23

29 U.S.C. § 202(a)(3) .................................................................8

29 U.S.C. § 203(b) ................................................................14, 18

29 U.S.C. § 203(i) ..................................................................18

29 U.S.C. § 203(j) ..................................................................18

29 U.S.C. § 203(s)(1)(A) ..............................................................6

29 U.S.C. § 203(r)(1) ..............................................................6, 7

29 U.S.C. §§ 206(a) ..................................................................14

29 U.S.C. §§ 207(a)(1) ............................................................5, 14

**Rules and Regulations**

Fed. R. Civ. Pro. 56(a) ............................................................5, 20

29 C.F.R. § 541.300 (2013) ..........................................................13

29 C.F.R. § 776.10(b) ............................................................15, 17

29 C.F.R. § 776.20(b) ................................................................14

29 C.F.R. § 779.103 ..................................................................14

29 C.F.R. § 779.214 ..............................................................7, 11

29 C.F.R. § 785.18 ..................................................................22

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14 (2013)..............................13

**Other Sources**

*Black's Law Dictionary* (10th ed. 2014) ..............................................9

Plaintiff Vladimir Dobrosmylov ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant DeSales Media Group, Inc.'s ("Defendant" or "DeSales") renewed motion for summary judgment (Dkt. No. 55) ("MOL").

## I.    PRELIMINARY STATEMENT

DeSales's central argument – that the Fair Labor Standards Act's ("FLSA") "enterprise" coverage does not apply to DeSales because it has no business purpose as a matter of law – is belied by the record and fails to account for the extensive business activities in which DeSales engages. While DeSales is a non-profit corporation, it is a media company that creates numerous media products that are provided to the general public, circulated on the internet, and distributed on cable television, and it contracts to provide technology, media, and public relations services to the Brooklyn Diocese and its parochial schools. Because these activities clearly could support a jury finding that DeSales is in competition with other businesses (*i.e.*, it is an "enterprise"), DeSales's motion should be denied.

This Court should also deny DeSales's motion for the separate and independent reason that the FLSA's "individual" coverage applies to Plaintiff. Regardless of whether DeSales is considered an "enterprise," Plaintiff is covered by the FLSA because he was engaged in commerce and produced goods for commerce. Specifically, Plaintiff's job required him, on a daily basis, to locate and pull video news content off the internet, to assemble and construct a television news program, and then to upload the program to the internet via various web platforms (*i.e.*, distribute the program). Thus, Plaintiff both engaged in commerce and actually produced goods for commerce.

In addition, DeSales's argument that at trial Plaintiff's proof of his hours worked should be limited solely to the time records produced by Defendants should be rejected because it is

procedurally improper, unsupported by a single fact, and has no basis in law. Finally, if this Court grants summary judgement in favor of DeSales on Plaintiff's FLSA claim, this Court should retain supplemental jurisdiction over Plaintiff's remaining New York Labor Law ("NYLL") claims because it would promote judicial economy, convenience, fairness and comity.

## II.     COUNTERSTATEMENT OF MATERIAL FACTS

Plaintiff hereby incorporates his Counterstatement of Material Facts Pursuant to Local Civil Rule 56.1 ("PSF"). These facts are detailed briefly below.

### A.  DeSales's History and Purpose

DeSales was founded in 1981 under the name "Trans Video Communications" and changed its name to "DeSales Media Group" in 2011. PSF ¶ 7. DeSales is authorized to hold, operate, maintain, and/or lease licenses from the Federal Communications Commissions ("FCC") and to lease or enter into other transactions relating to such FCC licenses. PSF ¶ 8. One of DeSales's stated purposes include making the educational and media content it produces available to public and private schools (that are not run by the Diocese of Brooklyn) and to interested community groups. PSF ¶ 9.

### B.  DeSales's Media Operations and Services

Among other thing, DeSales produces a nightly news program called "Currents News." PSF ¶ 10. Currents News features all types of news, including specifically, secular news. PSF ¶ 11. Currents News airs in the New York demographic market, which includes parts of Conneticut. PSF ¶ 12. DeSales distributes Currents News via cable television, making it available to subscribers of the basic cable package for 3 different cable providers (Spectrum, Optimum, and Verizon). PSF ¶ 13-14. Currents News is also available for free to anyone online via YouTube and

the Currents News website. PSF ¶ 15. DeSales also explicitly makes Currents News available to a global audience via the Crux website. PSF ¶ 16.

DeSales Media employs approximately 25 individuals who work on the Current News team. PSF ¶ 17. The employee positions on the Current News team include a director, a technical director, editors, an executive producer, associate producers, the anchor of the program, and reporters. PSF ¶ 18. The Currents News program is constructed, in part, by assembling video clips from other news sources, including Rome Reports, and secular news sources such as CNN and the Associated Press. PSF ¶ 19.

The Tablet is a newspaper that DeSales Media produces for the Diocese of Brooklyn. PSF ¶ 26. One of DeSales's explicit purposes is to "print, publish, and distribute the Tablet…via mail." PSF ¶ 27. DeSales Media employs 11-12 individuals who work on the Tablet team. PSF ¶ 28. DeSales Media publishes the Tablet online and on the Tablet's own website, which the general public can access. PSF ¶ 29. The Tablet's website features advertisements, some of which are from secular businesses. PSF ¶ 30. DeSales Media also publishes the Tablet in print and delivers the print newspaper to individual residences on a subscription basis. PSF ¶ 33. DeSales solicits advertisers to purchase advertising space in many of its media products, including in the Tablet. sells advertising related to its media products. PSF ¶¶ 31-32.

DeSales contracts with third parties to provide communication and technology services. PSF ¶ 35. Under contract, DeSales provides the following services to the Diocese of Brooklyn: producing marketing materials, doing public relations and crisis management for the Diocese, running Catholic Telemedia Network (providing educational content for Catholic schools within the Diocese), and providing information technology. PSF ¶ 36. In addition, DeSales contracts with the Diocese of Brooklyn to provide the Diocese with government and public affairs services,

including by developing communication strategies, functioning as the principal contact for outside media inquiries, and supporting and upgrading the Diocese's websites. PSF ¶ 37. DeSales also provides information technology to Catholic schools within the Diocese. PSF ¶ 38.

### C.  Plaintiff's Relevant Job Duties

Plaintiff was a Post-Production Supervisor for the Currents News program. PSF ¶ 20. Among other thing, Plaintiff's job duties included monitoring secular news cites to locate clips that Currents News could use in their broadcast. PSF ¶¶ 21-22. Plaintiff was tasked with locating video news clips from third party sources online, downloading these clips, and altering the clips to match the Currents News style and format. PSF ¶ 21. Plaintiff's job required him to combine video clips, edit video clips, and assemble the Currents News program. PSF ¶ 23. Plaintiff's job required him to finalize the Currents News program file and to upload this file to the internet on a daily basis. PSF ¶ 24. Plaintiff was also tasked with assembling a weekly promotional video for the Tablet, which would run as part of the Currents News program. PSF ¶ 34. DeSales's attorney provided DeSales with a document concerning Plaintiff's allegedly exempt status under the FLSA. PSF ¶ 25.

DeSales automatically deducted one hour of time from Plaintiff's clock-in and clock-hour work time records, regardless of whether Plaintiff worked during his lunch hour. PSF ¶ 40. Plaintiff normally did not take a lunch break but ate lunch at his desk while he worked. PSF ¶¶ 41-42. Plaintiff complained to his supervisors that he had too much work to accomplish and could not afford to take an hour for lunch and still get his work done. PSF ¶ 43. His supervisors told him that as a salaried employee he was not guaranteed a lunch break and that, if he wanted a break, he should take short five minute-breaks throughout the day. PSF ¶ 44.  During the course of his employment, Plaintiff sometimes forgot to clock-in right when he arrived to work. PSF ¶ 44.  When

4

that occurred, and if he subsequently remembered, he would clock in late, normally in the middle of the day. PSF ¶ 44.

### III.    ARGUMENT[1]

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a). In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d. Cir. 2003) (internal citations and quotations omitted). "The movant bears the burden of establishing that there are no genuine issues of material fact." *Jones-Khan v. Westbury Bd. Of Educ.*, No. 13-cv-7144, 2017 U.S. Dist. LEXIS 62897, at *15 (E.D.N.Y. April 25, 2017). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

#### A.  There Are Material Issues Of Fact Regarding FLSA Coverage That Preclude Summary Judgment

This Court should deny DeSales's motion for summary judgment on Plaintiff's FLSA claim because there are genuine disputes of material fact related to whether Plaintiff's employment was covered by the FLSA. The FLSA requires that an employer pay an overtime premium for hours worked in excess of 40 hours in a single workweek if an employee is either (1) employed by an enterprise engaged in commerce or in the production of goods for commerce, or (2) engaged

---

[1] As stated in Plaintiff's pre-motion letter, Plaintiff concedes that any FLSA violations were not willful (Dkt. No. 53 at 6), and therefore Plaintiff does not address DeSales's arguments on this issue.

in commerce or in the production of goods for commerce. *See* 29 U.S.C. §§ 207(a)(1). The two categories are commonly referred to as "enterprise" and "individual" coverage, respectively. *See Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 295 n.8 (1985). Because there are material facts in the record that support a jury finding that both types of coverage apply here, DeSales's motion should be denied.

> ### i. DeSales is an enterprise engaged in commerce and is covered by the FLSA

The only element of enterprise coverage in issue on this motion is whether DeSales is an "enterprise."[2] 29 U.S.C. § 203(s)(1)(A). The FLSA defines "enterprise" as "the related activities performed (either through unified operation or common control) by a person or persons for a *common business purpose*…" 29 U.S.C. § 203(r)(1) (emphasis added). DeSales's central argument is that its cannot be considered an "enterprise" because it does not have a "business purpose." MOL at 1-4. DeSales is wrong.

As a procedural matter, DeSales incorrectly asserts that the issue of enterprise coverage is jurisdictional and thus must be decided by this Court on summary judgment. MOL at 2. "[T]he question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, as defendant[] state[s], but an element that a plaintiff must establish in order to prove liability." *Gordon v. Gen. Prop. Mgmt. Assocs.*, Case No. 19-cv-8107, 2020 U.S. Dist. LEXIS 196596, at *11 (S.D.N.Y. Oct. 22, 2020) (citations omitted). "As such, in order to survive summary

---

[2] DeSales does not contest – or even mention – the other elements of enterprise coverage, *i.e.*, whether it "has employees engaged in commerce or in the production of goods for commerce, or… has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and whether it has at least $500,000 in annual gross volume of sales or business done. 29 U.S.C. § 203(s)(1)(A). Instead, DeSales's motion with respect to enterprise coverage is based solely on its contention that it is not an "enterprise" because it lacks a business purpose. MOL at 1-4. Thus, its motion must succeed or fail on that argument alone. Because DeSales has not set forth any facts or arguments in its moving papers regarding employees being engaged in commerce or the revenue threshold, Plaintiff need not himself identify facts regarding those elements, and summary judgment may not be entered based on those elements. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 115-116 (2d Cir. 2017).

judgment, the plaintiff need not prove that enterprise coverage exists but rather that a material dispute of fact regarding the issue is present." *Id.* Such a dispute exists regarding whether DeSales has a "business purpose." *See supra* at 7-13; *see e.g., Tony & Susan Alamo Foundation*, 471 U.S. at 298-299 ("[T]he characterization of petitioners' business…is a factual question."). Thus, this Court should view this summary judgment motion as any other summary judgment motion, and deny it because there are genuine issues of material fact in dispute and DeSales is not entitled to judgment as a matter of law.

Turning to the substance of the argument, a religious non-profit is considered an "enterprise" under the FLSA if, among things not relevant here, it operates with a "business purpose." 29 U.S.C. § 203(r)(1). In *Tony & Susan Alamo Foundation v. Secretary of Labor*, the Supreme Court analyzed when a non-profit is considered an "enterprise" under the FLSA. 471 U.S. at 295. There, the defendant was a church that argued that because it had a "religious" purpose, the revenue generated from its various businesses could not be for a "business purpose". 471 U.S. at 295. The Court flatly rejected this argument, explaining that the FLSA "contains no express or implied exception for commercial activities conducted by religious or other nonprofit organizations." *Id.* at 296. In coming to this conclusion, the Court further cited longstanding regulations interpreting the FLSA which provide that:

> Activities of eleemosynary, religious, or educational organization may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as *operating a printing or publishing plant*, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise.

29 C.F.R. § 779.214 (emphasis added). The Court went on to reject the argument that businesses that "are infused with a religious purpose" are exempt from the FLSA. *Tony & Susan Alamo Foundation*, 471 U.S. at 298.

The Court explained that it "has consistently construed [the FLSA] liberally to apply the furthest reaches consistent with congressional direction, recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency," and that Congress recognized that "a church which has a business operation on the side" should not be exempt. *Id.* at 296-298. The Court held that the FLSA covers religious organizations if their "businesses serve the general public in competition with ordinary commercial enterprise" because "the payment of substandard wages would undoubtedly give [these religious institutions] an advantage over their competitors." *Id.* at 299. The Court concluded that "[i]t is exactly this kind of 'unfair method of competition' that the [FLSA] was intended to protect…and the admixture of religious motivation does not alter a business' effect on commerce." *Id.* (quoting 29 U.S.C. § 202(a)(3)).

As such, the test for determining whether an entity has a "business purpose" is whether an entity "serve[s] the general public in competition with ordinary commercial enterprise." 471 U.S. at 299. This is an objective standard that is evaluated by "scrutinizing the activities at issue by reference to objectively ascertainable facts concerning their nature and scope." *Id.* In other words, the subjective motivation underpinning a non-profit's activities is completely irrelevant to determining whether an entity has a "business purpose." *See id.* ("[T]he admixture of religious motivation does not alter a business' effect on commerce.").

DeSales has failed to make a *prima facie* factual showing that it has no business purpose.[3] DeSales's 56.1 statement, which is a word-for-word copy of the vague and conclusory assertions in the affidavit of William Maier, DeSales's Chief Executive Officer, is focused primarily on

---

[3] In its memorandum of law in support of its motion, DeSales does not attempt to construct even an elementary summary judgment argument – by, for example, pointing to an undisputed material fact and explaining how the fact, when applied to the relevant legal standard, entitles it to judgment as a matter of law. *See generally* MOL.

DeSales's religious "purpose", "mission" or "goals." PSF ¶¶ 1-7. However, as explained above, these types of "facts" are completely irrelevant to whether DeSales has a business purpose, *i.e.*, serves the general public in competition with ordinary businesses. *See Tony & Susan Alamo Foundation*, 471 U.S. at 299; *Villafana v. Feeding S. Fla., Inc.*, Case No. 13-60760-civ, 2013 U.S. Dist. LEXIS 82603, at *10 (S.D. Fl. June 12, 2013) ("In determining whether a charitable enterprise meets the 'common business purpose' requirement, courts have looked at whether the enterprise is primarily engaged in competition in the public with ordinary commercial activities.").

The Maier affidavit's sole assertions regarding DeSales's supposed lack of competitors are entirely conclusory. Maier Aff. ¶¶ 7, 8. Maier merely asserts without explanation that DeSales has no commercial competitors. *Id.*; *see also Walker v. Hickenlooper*, 627 F. App'x 710, 716 (10th Cir. 2015) ("The term 'conclusory' refers to the expression of 'a factual inference' without including 'the underlying facts on which the inference is based.' *Black's Law Dictionary* (10th ed. 2014)."). For this reason alone, the Maier affidavit fails to establish DeSales's entitlement to summary judgment. *See BellSouth Telecomms., Inc. v. W.R. Grace & Co. – Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("'[U]ltimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary judgment motion.'").

Notably absent from DeSales's 56.1 statement and the Maier affidavit are any facts related to the core issues in the case – the nature, scope, and size of DeSales's media operations. PSF ¶¶ 1-7. For instance, DeSales provides no facts related to how it actually operates, who it contracts with, the value of those contracts, what it contracts for, the size and scope of its operations, a catalogue of its media products, an account of the audiences and reach of its media products, or a description of the actual services it provides. *Id.* The only statement in DeSales's 56.1 statement that could be construed as a relevant "fact" is the repeated conclusion that DeSales has "few, if

9

any, competitors, and no for-profit (commercial competitors)." PSF ¶ 6; *see also* PSF ¶ 7 ("DeSales does not compete with commercial enterprises."). However, none of the other facts in DeSales's 56.1 statement support such a conclusion, nor does DeSales not even attempt to explain how they do. Regardless, Plaintiff disputes this conclusion, as the record is replete with facts to support a finding that DeSales does compete with commercial enterprises.

In reality, DeSales is a news and media company. As such, it competes with a variety of other commercial enterprises in a variety of different markets. For example, DeSales publishes and distributes a newspaper both online and in print and thus competes for viewers, readers, and advertisers, with other media companies that publish online or print newspapers. PSF ¶¶ 26-33. DeSales creates and distributes its Current News program through three separate cable television providers and online and thus competes, for viewers, subscriptions, and advertisers, with other news programs on television and online. PSF ¶¶ 10-16. DeSales not only sells advertising space in its media products (including in the websites for its various products) and thus competes for advertisers with other media companies who also sell advertising space in their media products, but it explicitly solicits advertisers. PSF ¶¶ 30-32; *see also* DiGiulio Decl., Ex. G; Ex. H at 10-12; Ex. J. DeSales hires dozens of media professionals to run its operations and thus competes with other media companies in the labor market. PSF ¶¶ 17-18, 28. DeSales offers educational content and technology services to other public and private school systems, and thus competes with other educational content providers and technology services companies who provide these services to public and private schools. PSF ¶¶ 9, 38. The myriad number of products and services that DeSales creates and provides inevitably puts it into competition with a number of different of commercial enterprises.

DeSales's media operations are similar to operating a printing press or a publishing plant – both of which are activities that the Department of Labor explicitly used as examples of commercial activities that a religious organization could operate for a business purpose. *See* 29 C.F.R. § 779.214. Among producing other types of media, DeSales publishes the Tablet Newspaper and distributes it via a subscription service. PSF ¶¶ 26-33. In this context, DeSales is no different than any other publisher and is thus in competition with other commercial publishers.

Given the paucity of DeSales's factual contentions, it is unclear what exactly its argument is for why it does not compete with commercial enterprises. In any event, to the extent that DeSales argues that it does not "serve the general public" because its products are for the Catholic community and are created on behalf of the Brooklyn Diocese, this is belied by the fact that the media products it creates – *e.g.,* the Currents News program, and the Tablet Newspaper – are available to the general public (and not just the Diocese or its members) via subscriptions, cable television packages, and the internet. PSF ¶¶ 10-16, 26-33. Further, DeSales not only sells advertising space in its media products, including to secular advertisers, but it explicitly solicits advertisers on the Tablet's website. PSF ¶¶ 30-32; DiGiulio Decl., Ex. G. This is a clear indication that its advertising operations are open to the "general public."  Even according to its own certificate of incorporation, DeSales purposefully makes the educational and media content that it creates available to the general public. DiGiulio Decl., Ex. D, § III(a). Finally, even if DeSales had no other "customers" besides the Catholic Dioceses (as discussed *supra*, it does), by engaging in the media marketplace (by selling advertisements, producing media content on cable and the internet, and publishing a newspaper) it is in competition with other like-actors in the market, and "the payment of substandard wages would undoubtedly give [DeSales] an unfair advantage against

other organizations" in the marketplace. *Villafana*, 2013 U.S. Dist. LEXIS 82603, at *13. This reality makes clears that DeSales is in competition with commercial enterprises.

DeSales's media operations are clearly distinguishable from the activities of the defendants in the cases that DeSales relies upon. MOL at 3. In *Locke v. St. Augustine's Episcopal Church*, this Court found that a defendant church's religious services, sale of candles and wafers, fundraising from congregants, and operation of Sunday school and music lessons were not "commercial" in nature and that a small two-bedroom apartment that the church rented to the plaintiff custodian "did not constitute a business operation on the side." 690 F. Supp. 2d 77, 87-88 (E.D.N.Y. 2010). DeSales does not do *any* of the activities that the *Locke* court determined were not commercial, and the only reason the Court concluded that the rental property was not a business operation was because it was rented to the plaintiff himself – the custodian at the church. *Id.* In fact, churches that do rent their real estate to the general public and participate in the real estate marketplace are deemed to be operating for a "business purpose." *See e.g., Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280, 286 (S.D.N.Y. 2000) (holding that the church constituted an enterprise because of the extent and result of the church's efforts to secure rental activity competed directly with other commercial landlords and rental facilities); *cf Walker v. Interfaith Nutrition Network, Inc.,* Case No. 14-cv-5419, 2015 U.S. Dist. LEXIS 91418, at *7-9 (E.D.N.Y. July 14, 2015) (dismissing a complaint for failing to plead specific facts that the non-profit defendant's real estate activities – renting housing units, and buying and selling land – were done in competition with commercial enterprises, for example through solicitation or advertisement). Unlike the defendants in *Locke* and *Walker,* DeSales's sophisticated news and media operations bring it into the commercial marketplace – DeSales media products are consumed side by side with other cable television shows or news programs. Notably, unlike the defendant in *Walker*,

12

DeSales actively solicits advertising business for its media products. PSF ¶¶ 30-32; *see Walker* 2015 U.S. Dist. LEXIS 91418, at *7-9 (finding no business purpose because plaintiff failed to allege that defendant solicited or advertised as part of its real estate activities). This is a clear indication that DeSales is operating with a business purpose.

DeSales has cited no case where a Court held that activities that even closely resembled DeSales's media operations were not in competition with other commercial enterprises.[4] This is unsurprising because even a cursory look at DeSales's activities, operations, and media products makes clear that "it competes with other commercial enterprises, such that it could be deemed to have entered the economic arena and trafficked in the marketplace and thus subjected itself to the standards Congress has prescribed for the benefit of employees." *Malloy v. Ass'n of State and Territorial Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 56 (D.D.C. 2013) (quoting *Alamo*, 471 U.S. at 294) (internal quotations omitted).

For the foregoing reasons, there is plainly a genuine dispute of material fact as to whether DeSales has a business purpose and is therefore an "enterprise" under the FLSA.

### ii. Plaintiff was engaged in commerce and in the production of goods for commerce

This Court should also deny DeSales's motion for summary judgment on Plaintiff's FLSA claim for the separate and independent reason that there is a genuine factual dispute as to whether the FLSA's "individual" coverage applies to Plaintiff. As DeSales concedes, FLSA "individual"

---

[4] During the course of Plaintiff's employment DeSales itself clearly believed that it was subject to the FLSA.  In 2013, DeSales's attorney gave DeSales a checklist form for applying the FLSA's overtime exemption requirements to particular employee's roles. PSF ¶ 25; DiGiulio Decl. Ex. I. It is clear that the document had to do with FLSA coverage because the salary threshold listed on the document for overtime exemptions was $455 per week, then the FLSA's threshold, 29 C.F.R. § 541.300 (2013), rather than the higher New York salary threshold of $543.75 per week. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14 (2013). Notably, DeSales did not provide a document advising it that it was exempt from all FLSA requirements because it had no business purpose, and this checklist would be meaningless had DeSales believed that it was not an "enterprise" under the FLSA.

coverage may apply to Plaintiff even if this Court finds that there is no "enterprise" coverage. *See* MOL at 4; 29 U.S.C. § 207(a)(1).

Where an employee has "engaged in commerce or in the production of goods for commerce" such that the employee directly "participat[ed] in the actual movement of persons or things in interstate commerce" whether those things be "tangibles or intangibles, including information and intelligence," he or she is covered by the FLSA, regardless of the employer's status as an enterprise engaged in commerce. U.S.C. §§ 206(a), 207(a); 29 C.F.R. § 779.103; 29 C.F.R. § 776.20(b); *see Brennan v. Arnheim & Nelly, Inc.*, 410 U.S. 512, 516-17 (1973). Commerce is defined as "trade, commerce, transportation, ***transmission, or communication*** among the several states." 29 U.S.C. § 203(b) (emphasis added). Individual coverage may be found even if the employee is not engaged in those activities for a business purpose. *See Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 467 (S.D.N.Y. 2006) (recognizing that "individual employees of nonprofit organizations who do not engage in substantial competition with other businesses may be covered on an individual basis"). To determine whether an individual employee is covered, "courts conduct a fact-specific inquiry into the employment actions" of the employee. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

> a. **Plaintiff was "engaged in commerce" because his job duties required him to download video content off of the internet, alter this content, and upload DeSales's media products to the internet.**

To be engaged in commerce, "a substantial part of the employee's work must be related to interstate commerce." *Divins v. Hazeltine Electronics Corp.*, 163 F.2d 100, 103 (2d Cir. 1947). "[t]he test…is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). Here, because Plaintiff's job

duties required him to be an active participant in the dissemination of international news by moving media files throughout the internet (by locating and downloading media files and then uploading DeSales's finished media product files) he was "engaged in commerce" and is covered by the FLSA. *See e.g., Shultz v. Circulation Sales, Inc.*, 301 F. Supp. 937, 942 (E.D. Mo. 1969) (explaining that the Supreme Court "stated that local dissemination of national and international news to the reading public is an inseparable part of the flow of the interstate commerce" (internal citations omitted); *Shultz v. KSFM, Inc.*, Case No. Civ-S-739, 1969 U.S. Dist. LEXIS 9578, at *1-5 (E.D Ca. March 14, 1969) ("Defendant's employees, employed in the broadcasting…of news and information from nation-wide and world-wide sources, were engaged in interstate transmission and communication of news and were, therefore, engaged in interstate commerce within the meaning of the Act.").

Moreover, the relevant U.S. Department of Labor regulations provide that "since 'commerce' as used in the [FLSA] includes not only 'transmission' of communications but 'communication' itself, employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities of communication across State lines are covered by the" FLSA. 29 C.F.R. § 776.10(b). "It is undisputed that the use of the internet is an instrumentality of interstate commerce." *SEC v. Straub*, 921 F. Supp. 2d 244, 262 (S.D.N.Y. 2013) (internal citations omitted). Moreover, "if the employee, as a regular and recurrent part of his duties, uses such instrumentalities ***in obtaining or communicating information***… across state lines, he comes within the scope of the [FLSA] as an employee directly engaged in the work of 'communication' between the State and places outside the State." *Id.* (emphasis added).

Under this regulatory scheme, an employee can be "engaged in commerce" through a variety of ways. For example, "an employee could be engaged in commerce by regularly using the

mail or the telephone between states, or traveling across state lines." *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007) (internal citations omitted). An employee who, as a regular part of his or her job duties, orders goods from out of state is also engaged in commerce under the FLSA. *See Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) (holding that "recurrent and frequent purchases of goods from out-of-state vendors is more than sufficient to trigger the protection of the FLSA").

As is relevant here, an employee who regularly uses the internet, which is an instrumentality of commerce, as a regular part of his or her job duties is engaged in commerce. *See Foster v. Gold & Silver Priv. Club, Inc.*, Case No. 7:14CV00698, 2015 U.S. Dist. LEXIS 165217 at *15-16 (W.D.V. Dec. 8, 2015) (holding that dancers at a club were individually covered under the FLSA because they were required to regularly stream music from the internet for their performances); *Kendrick v. Eagle Int'l Grp., LLC*, No. 08-80909-CIV-MARRA, 2011 U.S. Dist. LEXIS 36246, at *8 (S.D. Fla. Apr. 4, 2011) (holding that the undisputed facts established that plaintiff qualified for individual coverage where the evidence showed that the plaintiff was required to use the internet and telephone to perform her job duties). When determining whether an employee's use of the internet is sufficient to trigger FLSA individual coverage, courts normally look to the regularity with which the employee used the internet and the manner in which it was used.

Here, Plaintiff's job required him to use the internet multiple times throughout each day. PSF ¶¶ 21-24. Specifically, as directed by his superiors, Plaintiff had to monitor secular news websites to locate clips that Currents News could use in its broadcast. PSF ¶ 21. Plaintiff also located video news clips from third party sources online, downloaded these clips, and altered them for use in the Currents News program. PSF ¶ 22. Plaintiff specifically pulled video clips from

Rome Reports, an online Catholic news source focused on Vatican related issues. PSF ¶ 19. At the end of each day, Plaintiff was required to finalize the Currents News program file and upload it to You Tube and the Currents News website. PSF ¶¶ 15, 24.

These tasks required Plaintiff to substantially engage with the internet on a daily basis in a significant and particularized manner – specifically to obtain media clips (from places like CNN, the AP, and Rome Reports) that are published online and available to individuals across state lines. *See* 29 C.F.R. § 776.10(b); *Shultz* U.S. Dist. LEXIS 9578, at *1-5 (holding that employees were engaged in commerce by broadcasting information and news that was collected nationally and worldwide, including from AP sources). Plaintiff's use of the internet was not incidental to his work, and nor was it the type of routine or basic internet use that permeates much of the modern workplace. *Cf Jaramillo v. Maoz, Inc.*, Case No. 20-201606-civ, 2021 U.S. Dist. LEXIS 29537, at *11-12 (S.D. Fla., Feb. 16, 2021) (explaining that vague allegations that a plaintiff used the internet or processed credit card purchases were insufficient to support an inference that plaintiff was engaged in commerce under the FLSA). On the contrary, much like ordering physical goods from out of state, Plaintiff's job required him to obtain specific media clips (*i.e.*, communication transmissions) that were published on the internet for wide interstate and international consumption and to download them and use them for DeSales's operations. *See e.g., Boekemeier*, 86 F. Supp. 2d at 287. Just as streamed songs from the internet can be integral to a dancer's job, the downloaded media clips were the central building blocks that Plaintiff used to construct the Currents News program, and was thus essential to his job duties. *See Foster*, 2015 U.S. Dist. LEXIS 165217 at *15-16. After the program was assembled and finalized, Plaintiff was the individual tasked with uploading the news program onto multiple internet platforms so that it was available to people both in and out of the state.

Thus, there are material facts in the record that support a finding that Plaintiff was "engaged in commerce" while working for DeSales.

> **b. Plaintiff produced goods for commerce by assembling and finalizing the Currents News program and the Tablet Promo**

Plaintiff's assembly and construction of the Currents News program and Tablet Promo, which were then distributed to the wider public via the internet, also renders Plaintiff's employment covered by the FLSA. The FLSA defines "goods" to mean "goods…wares, products, commodities, merchandise, or ***articles or subjects of commerce of any character, or any part or ingredient thereof***…." 29 U.S.C. § 203(i) (emphasis added). The statute further provides that "an employee shall be deemed to have engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or ***in any other manner working on*** such goods, or in any process or occupation necessary to the production thereof…" 29 U.S.C. § 203(j) (emphasis added). Because the FLSA's definition of "commerce" includes "communication," an "article or subject of" "communication" (*i.e.*, a piece of media content) is considered a "good" under the Act. *See* 29 U.S.C. § 203(b). Therefore, Plaintiff would be engaged in the production of goods if he produced or in any manner worked on media content that was communicated or transmitted in interstate commerce.

Here, Plaintiff almost exclusively produced and worked on media products that were transmitted in interstate commerce. Plaintiff was tasked with assembling and finalizing the Currents News program, which he uploaded to the internet on a daily basis. PSF ¶¶ 21-24. In addition, Plaintiff created the Tablet Promo, which was included in the Currents News program and thus published on the internet. PSF ¶ 34. Importantly, not only were the products the Plaintiff produced put on the internet for the general public to access (*i.e.*, by individuals both in and out of the state), but the record supports a finding that the media products that Plaintiff created were

routinely consumed out of state – both in Connecticut via cable television subscriptions and by "global audiences" via the Crux website. PSF ¶ 16, 12. As such, by broadcasting news on the internet (*i.e.*, via an instrumentality of interstate commerce) and directly to consumers in interstate markets, Plaintiff was covered by the FLSA. *See*, *e.g., Shultz*, U.S. Dist. LEXIS 9578, at *1-5 (holding that employees were engaged in commerce, and covered by the FLSA because they participated in the broadcasting of information and news).

Importantly, DeSales does not argue that Plaintiff was not actually engaged in commerce or that he did not produce goods for commerce when he worked for DeSales. MOL at 4-5. This is telling, as he clearly was and did. *See infra* at 13-18. Instead, in an attempt to avoid the clear facts of this case, DeSales makes a procedural argument that Plaintiff is somehow prevented from arguing that "individual" FLSA coverage applies to his employment because Plaintiff did not explicitly state the words "individual coverage" in his Complaint or make this argument during the first summary judgment proceedings. MOL at 4-5.[5] DeSales is incorrect that Plaintiff was required to describe his "precise legal theory" for FLSA coverage in his complaint. *Gregory v. Quality Removal, Inc.*, Case No. 14-2148-civ, 2014 U.S. Dist. LEXIS 154293, at *14-16 (S.D. Fl. Oct. 29, 2014). "Under the plain language of [FRCP] 8, and well established precedent…the issue is whether Plaintiff's Complaint sufficiently notified Defendant[] of an FLSA claim predicated in part on engagement in commerce…" *Id.* Plaintiff has satisfied this burden here. In his complaint, among other things, Plaintiff alleged that he worked for DeSales's television station as a video

---

[5] DeSales's position regarding the fact that Plaintiff did not address this issue in the first summary judgment proceeding is outrageous. The entire reason the parties are now engaged in a second summary judgment proceeding is because DeSales **failed to raise certain issues** in its first summary judgment motion. (Dkt No. 53 at 1-3). Aside for its hypocritical position that Plaintiff should be prohibited from making this argument now because it was not raised in the first summary judgment motion, when DeSales's whole motion is premised on making arguments it could have made previously but did not, Plaintiff's position here – that there is a genuine dispute of material fact on whether "individual" coverage applies – would have made no sense to raise in the previous motion because DeSales did not claim that it was entitled to judgment as a matter of law on this issue. DeSales moved for summary judgment on completely different grounds.

editor for the Currents News program which aired on NET TV (a television channel run by DeSales) and that his worked included pulling clips from syndicated sources and constructing clips using this pre-recorded material. (Dkt. No. 1 ¶¶ 13-14, 17). These facts are sufficient to give DeSales reasonable notice that Plaintiff may be covered under an "individual" theory of FLSA coverage because they support a reasonable inference that Plaintiff's job required him to be engaged in commerce. *See Gregory*, 2014 U.S. Dist, LEXIS 154293, at *14-16 ("Plaintiffs are not barred from individual coverage simply because they did not use that particular legal term of art in their Complaint.").

As detailed above, this Court should deny DeSales's summary judgment motion because the factual record supports a finding that Plaintiff was individually covered under the FLSA.

### B.  DeSales's Argument Regarding Plaintiff's Time Records Should Be Rejected

In its motion papers, DeSales bizarrely argues that if this case proceeds beyond this motion, Plaintiff should not be allowed to rely on any evidence other than DeSales's time records, such as, *e.g.*, his own testimony, to establish the number of hours that he worked. MOL at 6-7. This argument simply has no place in a summary judgment motion. The relief that DeSales seeks – an order preventing Plaintiff from relying on certain evidence to support his case – cannot be granted under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. Pro. 56(a) ("a party may move for summary judgment, identifying *each claim or defense* – or the part of each claim or defense – on which summary judgment is sought." (emphasis added)). DeSales's request is typical of those made in motions *in limine*, not on summary judgment. *See Volker v. Cty. Of Nassau*, Case No. 13-cv-01187, 2019 U.S. Dist. LEXIS 196827, at *4 (E.D.N.Y. Nov. 13, 2019) ("The purpose of a motion *in limine* is to facilitate an efficient trial by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without

20

lengthy argument at, or interruption of, the trial." (internal citations omitted)). As it is procedurally improper to make this argument in this motion, the Court should deny DeSales's request.

Even when viewed as an argument for summary judgment, DeSales utterly fails to articulate a single undisputed fact that could justify summary judgment. DeSales's 56.1 Statement does not make a single assertion concerning the number of hours Plaintiff worked.[6] *See* PSF ¶¶ 1-7. DeSales did not even submit the time records that it argues that Plaintiff must rely upon.[7] DeSales's complete failure in this regard prejudices Plaintiff and renders him unable to respond coherently to DeSales's argument for summary judgment.[8] *See, e.g., Capitol Records, LLC v. Escape Media Group, Inc.*, Case No. 12-cv-6646, 2014 U.S. Dist. LEXIS 183098, at *59 n.17 (S.D.N.Y. May 28, 2014) (explaining that "judges are not like pigs, hunting for truffles buried in the record" and are "under no obligation to sift through evidence that is not cited specifically to support a fact proposed in a statement of material facts"). On this separate basis, the Court should deny DeSales's argument.

Regardless of the clear procedural and evidentiary defects, DeSales is simply wrong on the law that the existence of time records forecloses the use of other evidence to establish the amount of time that Plaintiff worked. On the contrary, a plaintiff may always argue that time records are inaccurate and therefore do not conclusively establish his or her hours worked. *E.g., Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363-64 (2d Cir. 2011) ("[I]f an employer's records are

---

[6] Notably, in its first summary judgment motion, DeSales took the position that there was a genuine dispute of material fact as to the number of hours Plaintiff worked. (Dkt. No. 41 at ¶ 99).

[7] For example, had DeSales submitted Plaintiff's time records as support for the fact that Plaintiff worked a certain number of overtime hours during the statutory period, then Plaintiff could coherently respond to that assertion based on the record generated in discovery. Without such an assertion, DeSales's argument for summary judgment is nonsensical.

[8] DeSales cannot cure its failure to submit Plaintiff's time records by attaching them to their reply brief. *See S.M.R.C., Inc. v. Watkins*, Case No. 13-cv-193, 2015 U.S. Dist. LEXIS 133751, at *18 n.10 (E.D.N.Y. May 4, 2015) (noting that "[t]his Circuit has made clear it disfavors new issues being raised in reply papers" because the "non-movant does not have an adequate opportunity to respond" (internal citations omitted)).

21

inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference[.]' Consistent with *Anderson*, an employee's burden in this regard is not high.  It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection.") (internal citations omitted); *Haifeng Xie v. Sakura Kai I Inc.*, Case No. 17-cv-7509, 2019 U.S. Dist. LEXIS 62721 at *15 (E.D.N.Y. April 11, 2019) (noting that work schedules "set a floor as to [Defendants] liability" and that "[t]he only genuine issue of fact is whether Defendants are *more* liable than these documents suggest"); *Aponte v. Modern Furniture Mfg. Co.*, Case No. 14-cv-4813, 2016 U.S. Dist. LEXIS 131408, at *31-33 (E.D.N.Y. Sept. 24, 2016) (denying summary judgment on overtime claim because plaintiffs offered "testimony suggesting that the [time] records [were] not accurate or complete because they do not reflect their overtime hours").

Plaintiff has identified several deficiencies in the accuracy of DeSales's time records.  First, DeSales deducted an hour lunch break from Plaintiff's daily total hours, even though Plaintiff generally did not take any meaningful lunch break, let alone an hour-long break. PSF ¶ ¶ 40-41. Plaintiff in fact complained to his direct superior about not being given any lunch break, and was told that he was not allowed to take a full hour lunch break but should take a series of small five-minute breaks throughout his work day instead.[9] PSF ¶¶ 43-44.  In reality, Plaintiff rarely took any breaks while he was working for DeSales. PSF ¶¶ 43-44; DiGiulio, Decl., Ex. C ¶ 5-7. In addition, Plaintiff sometimes forgot to clock-in when he arrived to work, resulting in a clock in time that was later than the actual time he began working. PSF ¶ 45. Thus, Plaintiff has raised a genuine

---

[9] Of course, five-minute breaks are compensable time under the FLSA.  *See* 29 C.F.R. § 785.18; *Gallego v. Adyar Ananda Bhavean Corp.*, No. 16 CV 4631, 2019 U.S. Dist. LEXIS 3423, at *4-6 (S.D.N.Y. Jan. 8, 2019).

dispute of material fact as to the total number of hours that he worked, and he should not be limited to relying solely on the time records to support his case. *See Kuebel*, 643 F.3d at 363-64.

Because the relief DeSales seeks cannot be obtained in a summary judgment proceeding, DeSales fails to identify an undisputed material fact for which it is entitled to judgment as a matter of law, and there is a dispute as to the number of hours that Plaintiff worked, this Court should reject DeSales's arguments on this issue.

### C. This Court Should Exercise Supplemental Jurisdiction Over Plaintiff's New York Labor Law Claims

Should this Court determine that the FLSA does not apply to DeSales, Plaintiff requests that this Court retain supplemental jurisdiction over Plaintiff's NYLL claims. *See* 28 U.S.C. § 1367(c) ("[D]istrict courts *may* decline to exercise supplemental jurisdiction") (emphasis added). This Court's discretionary decision to retain supplemental jurisdiction over the NYLL claims is guided by four factors: judicial economy, convenience, fairness and comity. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 1218, 122 (2d Cir. 2006). In this case, all of the factors favor retaining jurisdiction here.

At the time of this submission, this case has been pending in this Court for almost two years, discovery is completed, the legal issues in dispute have been substantially narrowed, and your Honor is familiar with the facts and issues of the case. Should the Court dismiss Plaintiff's state law claims Plaintiff would just re-file them in New York State court but would be prejudiced by starting the litigation from square one. By retaining jurisdiction, the Court could avoid the unnecessary cost and time to the parties of relitigating this case. This is especially so because Plaintiff's core NYLL claims are functionally identical to the FLSA claims. Thus, convenience for the parties and overall judicial economy would be promoted by allowing Plaintiff to go to trial on his remaining state law claims.

Retaining jurisdiction would also promote fairness here. Plaintiff has litigated his case in this Court, and after winning the first summary judgment motion, DeSales, seeing the writing on the wall, made its second motion based on a "newly discovered" theory with the hopes of delaying this proceeding even further. That a full victory for DeSales on this second motion would have no impact on DeSales's overall liability for Plaintiff's overtime claims (because Plaintiff would simply re-file the overlapping NYLL overtime claims in state court), shows that the whole purpose of this second motion is just to delay a trial on the merits. It would be unfair to reward such a bad faith and obstructionist strategy.

Accordingly, should the Court find that the FLSA does not cover Plaintiff 's employment as a matter of law, Plaintiff respectfully requests that this Court retain supplemental jurisdiction over his remaining NYLL claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny DeSales's renewed motion for summary judgment.

Dated: New York, New York

June 15, 2021

By:    _s/Michael DiGiulio _____
       D. Maimon Kirschenbaum
       Michael DiGiulio
       JOSEPH & KIRSCHENBAUM LLP
       32 Broadway, Suite 601
       New York, NY 10004
       212-688-5640

       *Attorneys for Plaintiff*

24