UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                   :
VLADIMIR DOBROSMYLOV,             :
                                                   : **MEMORANDUM DECISION**
                           Plaintiff,      : **AND ORDER**
                                                     :
             - against -            : 19-cv-5122 (BMC)
                                                     :
DESALES MEDIA GROUP, INC.        :
                                                     :
                         Defendant.       :
                                                     :
-------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Vladimir Dobrosmylov once worked as a Lead Video Editor and Graphic Artist for defendant DeSales Media Group, Inc., a non-profit corporation that publishes news "with a Catholic point of view." After plaintiff's termination, he sued defendant under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff alleged that defendant failed to pay overtime.

In a motion for summary judgment, defendant argued that plaintiff's work fell within the FLSA and NYLL exemptions for "creative professionals." I disagreed. See Dobrosmylov v. DeSales Media Grp., Inc., No. 19-cv-5122, 2021 WL 1224376, at *4 (E.D.N.Y. Apr. 1, 2021). In a footnote, however, I stated that I could not grant summary judgment "on liability," as plaintiff had requested. Id. at *5 n.5. This was so because defendant "appear[ed] to dispute (1) whether plaintiff ha[d] established . . . that he worked over 40 hours per week and (2) whether it 'is an enterprise whose annual gross volume of sales made or business done is not less than $500,000' as the FLSA requires." Id. (quoting 29 U.S.C. § 203(s)(1)(A)(ii)).

Seizing on that footnote, defendant sought leave to file a second motion for summary judgment.  The practice is disfavored.  See, e.g., Int'l Bus. Machs. Corp. v. Johnson, No. 09-cv-4826, 2009 WL 2356430, at *2 (S.D.N.Y. July 30, 2009).  To justify the motion, defendant argued that it was not covered by the FLSA in the first place.  "[I]t would better serve judicial economy for the core issue of [FLSA coverage] to be decided by summary judgment, albeit a second such motion," defendant posited.  It turns out that was not the case.

## I.      FLSA Coverage

"[T]he failure of the plaintiff to demonstrate an issue for trial involving employee coverage . . . is a proper basis for dismissing his FLSA claim on summary judgment."  Li v. Zhao, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  Contrary to defendant's assumption, however, coverage is not a jurisdictional issue, but an element of the plaintiff's claim.  See Gordon v. Gen. Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 837 (S.D.N.Y. 2020).  That means the plaintiff need not *prove* coverage to survive summary judgment – showing a genuine dispute of material fact is sufficient.  Id.

There are two types of employee coverage: "enterprise coverage" and "individual coverage."  Li, 35 F. Supp. 3d at 305.  Enterprise coverage applies if the plaintiff is "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).  To satisfy this definition, a business must be an "enterprise" that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) has an "annual gross volume of sales made or business done" of "not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  § 203(s)(1)(A)(i)-(ii).

When moving for leave to file a second motion for summary judgment, defendant did not address the interstate commerce element.  It argued instead that it "does not have at least $500,000 in annual *commercial* revenue as the FLSA requires."  When defendant filed its actual motion, however, the moving papers made some curious omissions.  Notably, neither defendant's Local Rule 56.1 statement nor its memorandum of law said anything about defendant's revenue.  Defendant also omitted any discussion of the $500,000 threshold.  I thus deem defendant to have abandoned any argument that it fails to satisfy the two principal elements of enterprise coverage.  Cf. Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 115-16 (2d Cir. 2017); Albrecht v. Wackenhut Corp., No. 07-cv-6162, 2009 WL 3078880, at *1 n.3 (W.D.N.Y. Sept. 24, 2009), aff'd, 379 F. App'x 65 (2d Cir. 2010).

In its actual motion, defendant offers a slightly different, albeit related, argument: that it does not qualify as an "enterprise" in the first place.  The FLSA defines an "enterprise" as "the related activities performed . . . by any person or persons for a common business purpose."  29 U.S.C. § 203(r)(1).  Activities "may be performed for a business purpose" even though they are performed by an "eleemosynary, religious, or educational organization."  29 C.F.R. § 779.214.  These organizations "will be treated under the Act the same as . . . the ordinary business enterprise" to the extent that their activities are "ordinary commercial activities."  Id. And activities are "ordinary commercial activities" when an organization "serve[s] the general public in competition with ordinary commercial enterprises."  Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 97 (2d Cir. 2009) (quoting Tony & Susan Alamo Found. v. Sec'y of Lab., 471 U.S. 290, 297, 299 (1985)).

Although defendant insists that it has "few, if any, competitors," it offers no facts to support that conclusory statement.  The record strongly suggests otherwise.  For starters, plaintiff

has offered evidence that defendant competes with other news organizations for viewers.

Defendant produces a nightly newscast called "Currents."  Although the show focuses on the

Catholic Church, plaintiff has produced evidence that it also covers "secular news."  Producing

the show requires defendant's employees, including plaintiff, to compile clips from other news

sources, including secular sources like CNN.  Defendant then distributes the show through cable

television providers, which air the show throughout New York and Connecticut.  Based on these

activities, defendant describes itself as a "direct provider of Catholic news, events and original

content through print, TV, [and] digital" media.  In that capacity, defendant competes with other

news organizations for viewers.  Cf. 29 C.F.R. § 779.214 (stating that "operating a printing and

publishing plant" are examples of "ordinary commercial activities")

      With more viewers comes more advertising, and defendant competes on this front as

well.  Defendant sells advertising on several media products.  Crucially, defendant also solicits

advertising.  For example, plaintiff worked on a weekly promotion for "The Tablet," defendant's

weekly newspaper.  In a page titled "Advertise With The Tablet," defendant's website states:

> The Tablet newspaper reaches more than 50,000 homes and churches every week.
> Included with the Tablet is the [S]panish-language monthly Nuestra Voz and
> Tablet Jr., the newspaper produced by and for the students of the diocese.  The
> Tablet's website has more than 100,00 page views each month.
>
> It's time to start advertising in The Tablet.
>
> Let our professional and knowledgeable advertising department create a plan to
> reach your target audience and meet your business goals.
>
> View and download our media kit here: DeSales Media Kit 2020-21, then contact
> one of our representatives or fill out the form below.

That "media kit" is a stylish, glossy pamphlet advancing why defendant is an attractive option

for advertisers.  It explains the reach of "The Tablet" and "Currents" in the New York area, the

different forms of advertising that defendant offers, and where advertisers can find more

information about defendant's advertising rates.  On this evidence, a reasonable jury could easily conclude that defendant competes with ordinary commercial enterprises.  See Boekemeier v. Fourth Universalist Soc'y in the City of New York, 86 F. Supp. 2d 280, 285-86 (S.D.N.Y. 2000) (holding that a church competed with commercial landlords in renting its event space where the church used an "an extensive advertising campaign to solicit interstate special event renters").

This competition for viewers and advertisers distinguishes defendant's activities from those in the cases defendant cites.  In Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 87-88 (E.D.N.Y. 2010), a church did not compete with ordinary commercial enterprises in renting its buildings for social events.  But that church, unlike defendant, "d[id] not advertise or market the buildings for events."  Id. at 88.  Similarly, in Walker v. Interfaith Nutrition Network, Inc., No. 14-cv-5419, 2015 WL 4276174, at *3 (E.D.N.Y. July 14, 2015), a non-profit did not compete when operating its soup kitchens, emergency shelters, and housing programs.  The court emphasized that no facts "suggest[ed] that in renting and selling its properties [the non-profit] competed in the marketplace with 'ordinary commercial realtors,' for example, through advertisement or solicitation."  Id. (quoting Locke, 690 F. Supp. 2d at 88).  Here, however, the record is replete with that exact type of fact.

Having ignored those facts, defendant instead emphasizes its 501(c)(3) status.  A 501(c)(3) corporation is "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes."  26 U.S.C. § 501(c)(3).  Such a corporation "is not an enterprise merely because it receives income" or charges a fee for services. Walker, 2015 WL 4276174, at *3.  But when that corporation enters the marketplace and competes with commercial enterprises, it must follow the FLSA.  See Tony & Susan Alamo Found., 471 U.S. at 297.  To hold otherwise would authorize "exactly th[e] kind of 'unfair

method of competition' that the Act was intended to prevent."  Id. at 299 (quoting 29 U.S.C.
§ 202(a)(3)).

Defendant also highlights its religious mission.  No one doubts the sincerity or
importance of that mission.  But the Supreme Court has rejected the notion that this mission
exempts defendant from the FLSA.  In Tony & Susan Alamo Foundation v. Secretary of Labor,
471 U.S. 290, 298 (1985), the Court held that religious, non-profit corporations do not differ
from ordinary commercial businesses merely "because they are infused with a religious
purpose."  Even a church cannot avoid the FLSA when it "has a business operation on the side."
Id. (quoting another source).  Plaintiff has thus shown a genuine dispute of material fact about
defendant's status as an "enterprise" for purposes of FLSA coverage.[1]

Even if defendant did not qualify as an "enterprise," plaintiff might still show a second
type of FLSA coverage, known as "individual coverage."  See, e.g., Walker, 2015 WL 4276174,
at *4.  In its opening brief, defendant does not seem to contest that plaintiff could satisfy the test
for individual coverage.  Instead, defendant argues that plaintiff cannot pursue this theory
because the term "individual coverage" does not appear in the complaint.  But a "failure to use
the legal term 'individual coverage' . . . does not, in and of itself, deny [a plaintiff] this particular
type of statutory coverage" where the complaint "clearly sought relief under the FLSA."
Gregory v. Quality Removal, Inc., No. 14-cv-21480, 2014 WL 5494448, at *4 (S.D. Fla. Oct. 30,
2014); accord Zhao v. Sunny 39 Hotel Corp., No. 14-cv-1847, 2015 WL 5307716, at *5
(E.D.N.Y. Sept. 10, 2015).  "Rather, the issue is whether [plaintiff's complaint] sufficiently
notified [defendant] of an FLSA claim predicated in part on engagement in commerce."

---

[1] Defendant has not argued that the Free Exercise Clause precludes application of the FLSA to its religious
activities.  See Tony & Susan Alamo Found., 471 U.S. at 303–06.

Gregory, 2014 WL 5494448, at *5.  "Factual allegations alone are what matters," and here, the facts alleged were sufficient.  McEachin v. McGuinness, 357 F.3d 197, 199 n.2 (2d Cir. 2004) (quoting another source).  The question, then, is whether plaintiff has shown a genuine dispute of material fact as to individual coverage.

This type of coverage extends to employees "engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).  An employee "engage[s] in commerce" by "perform[ing] work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof."  Li, 35 F. Supp. 3d at 307-08 (quoting 29 C.F.R. § 779.103).  An employee "engage[s] in the production of goods for commerce" when the employee "handles or otherwise works on goods intended for shipment out of the State, directly or indirectly."  Id. at 307 (cleaned up) (quoting 29 C.F.R. § 779.104).  The term "goods" includes "products, commodities, merchandise, or articles or subjects of commerce of any character," 29 U.S.C. § 203(i), and the term "commerce" includes "transportation, transmission, *or communication* among the several States," § 203(b) (emphasis added).

Plaintiff has submitted evidence that his work fell within this framework.  He not only downloaded videos from the internet to help produce a news program that his employer broadcasted to another state; plaintiff was also responsible for uploading that program to YouTube, where viewers could watch it from around the world.  Defendant addresses this evidence only in reply, and its arguments are unavailing.  In large part, defendant emphasizes that it does not charge viewers for watching "Currents."  But experience tells us that a business can offer a free product as part of a commercial activity if the business derives advertising revenue from that product.  (Consider a commercial broadcaster like CBS or ABC.)  Here,

plaintiff has submitted evidence that defendant offers advertisements on both "Currents" and "The Tablet." And faced with that evidence, defendant offers only the conclusory statement that plaintiff "has nothing to do with" these advertisements and that "Currents" has only "sponsors," not "advertisers." I see no reason why these conclusions or labels would change the FLSA analysis. Plaintiff has therefore shown a genuine dispute of material fact on individual coverage.

Because plaintiff has shown a genuine dispute of material fact about both enterprise and individual coverage, these issues do not warrant summary judgment in defendant's favor.

## II.      The Other Bases for Summary Judgment

Although the main issue is FLSA coverage, defendant has two tag-along arguments. First, defendant seeks "summary judgment" on what type of evidence plaintiff could use at trial. Specifically, defendant argues that plaintiff must rely on defendant's time records, rather than his own recollection, to establish the hours he worked. The problem, however, is that summary judgment does not address what type of evidence a party can use at trial – that is the purpose of a motion *in limine*. Even if I construed defendant's motion as a motion *in limine*, I could not decide it, for defendant has not produced the time records. This issue does not warrant summary judgment.

Second, defendant seeks partial summary judgment on the issue of willfulness. Unlike the propriety of evidence at trial, willfulness does provide a basis for partial summary judgment. See, e.g., Ozawa v. Orsini Design Assocs., Inc., No. 13-cv-1282, 2015 WL 1055902, at *7 (S.D.N.Y. March 11, 2015). The issue matters because the FLSA extends the statute of limitations an extra year for willful violations. See 29 U.S.C. § 255(a). When defendant filed this motion, plaintiff had already conceded that any FLSA violations were not willful. I will therefore grant partial summary judgment to defendant on this issue.

In the end, defendant may have prevailed on this small front, but this is still a case study on why successive motions for summary judgment are disfavored.  Parties should "present their strongest case for summary judgment when the matter is first raised."  Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552, 554 (S.D.N.Y. 2004).  Most do.  In fact, that appears to be what happened here.  When I denied defendant's first motion for summary judgment, I acknowledged the difficulty of the exemption issue, stating that "this is something of a close case."  Dobrosmylov, 2021 WL 1224376, at *4.  The second time around, however, I must acknowledge that it was ill-advised to grant leave to file this motion in the first place.  Defendant suggested that the facts would warrant summary judgment, but it went on to offer almost no facts to support its contentions.  The Local Rule 56.1 statement contained only six paragraphs.  In putting forth this underdeveloped motion, defendant "waste[d] resources of both the parties and the court."  Int'l Bus. Machs., 2009 WL 2356430, at *2 (quoting another source).  This tactic may have succeeded in delaying the litigation, but it also increased the attorneys' fees that defendant will have to pay if plaintiff prevails at trial.  So it is only fair that defendant may have hurt itself more than anyone else.

## CONCLUSION

For the foregoing reasons, defendant's renewed motion for summary judgment [54] is granted in part and denied in part.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
        July 1, 2021